THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL A. BACON, <br><br> Plaintiff, <br><br> v. <br><br> SALT LAKE COUNTY JAIL et al., <br><br> Defendants. | **MEMORANDUM DECISION AND DISMISSAL ORDER** <br><br> Case No. 2:21-CV-718 DAK <br><br> District Judge Dale A. Kimball |

Plaintiff Michael A. Bacon, as a federal pretrial detainee who had been held in Salt Lake County Jail (SLCJ),[1] filed this *pro se* civil-rights action, *see* 42 U.S.C.S. § 1983 (2025),[2] proceeding *in forma pauperis*, *see* 28 *id.* § 1915. (ECF Nos. 1, 12, 14.) Plaintiff later filed an amended complaint. (ECF No. 27.)

After screening Plaintiff's amended complaint, the Court ordered him to cure its numerous deficiencies. (ECF Nos. 27, 43.) In that Cure Order, the Court gave specific guidance on the deficiencies, along with other details to help Plaintiff file a second amended complaint with valid claims. (ECF No. 43.) The Court advised, "[T]he Court will perform its screening

---

[1]Plaintiff was a pretrial detainee when he signed his original complaint on December 1, 2021. (ECF Nos. 14, at 2; 46, at 10.)

[2]The federal statute creating a "civil action for deprivation of rights" reads, in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.S. § 1983 (2025).

function and determine itself whether the amended complaint warrants service or dismissal (in part or in full)." (*Id.* at 11.)

Plaintiff has since filed the Second Amended Complaint (SAC). (ECF No. 46.) In it, he names--in their individual capacities[3]--one federal defendant, Nathan Harris, of United States Marshals Service (USMS), and the following Salt Lake County (SLC) defendants: Shelly Childers, inmate accounting supervisor; Ms. Moore, mailroom supervisor; Rob Ballard, clinical service director; John Doe dentist; Nurse Tammy; Nurse Diane; Nurse Gail; Nurse Chanda; Nurse Brett; Nurse David; Nurse Pat; Nurse Dallas; Nurse Jessica; John Doe doctor; John Doe doctor; John Doe doctor; and Sheriff Rosie Rivera.[4] (*Id.* at 2-3, 8-9.)

Plaintiff asserts these defendants violated his federal constitutional rights during his incarceration at SLCJ, "from October 14, 2021 until . . . sometime in July 2022." (*Id.* at 11.) These are the ways that Plaintiff asserts Defendants violated his rights: stealing his money;

---

[3]Under each defendant's name, individual and official capacities are printed, but it appears Plaintiff crossed out "official" in each case. Defendant Rivera's name has just "individual" printed below it. (ECF No. 46.)

[4]The Tenth Circuit has said the following about unnamed defendants:

> Courts have generally recognized the ability of a plaintiff to use unnamed defendants so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served. *See Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995); *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *Maggette v. Dalsheim*, 709 F.2d 800, 803 (2d Cir. 1983); *Schiff v. Kennedy*, 691 F.2d 196, 197-98 (4th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Colle v. Brazos Cnty.*, 981 F.2d 237, 243 (5th Cir. 1993) (noting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), with approval, but affirming dismissal of suit against unnamed defendants for failure to prosecute where defendants remained unnamed for three years).

*Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996).

Plaintiff has made no effort to ascertain the identities of or describe facts sufficient to identify the unnamed doctor defendants. Accordingly, the three John Doe doctors are dismissed for failure to state a claim for relief under § 1983. *See Hill v. Corr. Corp. of Am.*, 14 F. Supp. 2d 1235, 1238 (D. Kan. 1998) ("The John Doe defendants described only as [entity] employees have not been named or identified in the pleadings in any manner whatsoever. As a consequence, personal service could never be effectuated, and no relief can be awarded against them. Plaintiff alleges in conclusory fashion that he was assaulted and discriminated against by 'defendants' but never describes events or alleges dates, locations, specific acts or other details. Nor does he ascribe any particular acts to a certain defendant.").

impeding his grievances and legal access and mail; denying him dental treatment; and harassing him with crude remarks. (*Id.*) To remedy his alleged consequent injuries of pain and loss of money, Plaintiff requests damages. (*Id.*)

Having now thoroughly screened and liberally construed[5] the SAC under its statutory review function,[6] the Court dismisses this action.

## I. ANALYSIS--FAILURE TO STATE A CLAIM

### A. Standard of Review for *Sua Sponte* Dismissals

Assessing a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when--though the facts are viewed in the plaintiff's favor--the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to

---

[5]The Court recognizes Plaintiff's *pro se* status, and so construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Still, such liberal reading is meant merely to overlook technical formatting errors and other similar defects in Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not excuse Plaintiff from the duty to meet various rules and procedures directing litigants and counsel or the mandates of substantive law; regarding these, the Court will treat Plaintiff with the same standards applicable to counsel licensed to practice law before this Court's bar. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[6]The screening statute reads:
> (a) Screening.—The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.S. § 1915A (2025).

suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). "[T]he complaint must contain something more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Eaves v. Kory*, No. 24-1048, 2024 U.S. App. LEXIS 12964, at *2-3 (10th Cir. May 30, 2024) (unpublished) (quoting *Iqbal*, 556 U.S. at 678). Also, "[f]acts, not conclusions, must be pleaded--'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

As the Court reviews the sufficiency of Plaintiff's allegations, it painstakingly does so per individual defendant, per cause of action. *See Williams v. Utah Dep't of Corr.*, 928 F. 3d 1209, 1212 (10th Cir. 2019) (stating plaintiff must "explain[] which . . . prison-official defendants are liable for what improper conduct"). Indeed, § 1983 cases often include a list of defendants, like

> the government agency and a number of government actors sued in their individual capacities. . . . [I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins*, 519 F.3d at 1249-50 (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10).

When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the

plaintiff has not carried the burden of providing "adequate notice as to the nature of the claims

against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants'

or a list of the defendants named individually but with no distinction as to what acts are

attributable to whom, it is impossible for any of these individuals to ascertain what particular

unconstitutional acts they are alleged to have committed." *Id.*[7]

---

[7]Because the original complaint had not adequately "affirmatively link[ed] defendants to civil-rights violation[s]," the Cure Order contained a section marked, "Affirmative Link," under which Plaintiff was alerted that each defendant must be linked to the particular behavior that constitutes a legal claim. (ECF No. 43, at 2, 5-6.) This quote from a case was provided to Plaintiff so that he would understand his burden:

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins*, 519 F.3d at 1250 (explaining when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998) (holding district court's analysis of plaintiff's § 1983 claims was "infirm" when district court "lump[ed]" together plaintiff's claims against multiple defendants--"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"--and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

(*Id.* at 6.) (quoting *Estate of Roemer v. Johnson*, 764 F. App'x 784, 790-91 (10th Cir. 2019)). Plaintiff was further warned,

> "A plaintiff's failure to satisfy this requirement [of pleading personal participation by each defendant] will trigger swift and certain dismissal." *Id.* at 790 n.5. The Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id.*

(*Id.*) (quoting *Roemer*, 764 F. App'x at 790 n.5). Other directions in the Cure Order stated,

> (ii) The complaint must clearly state in the body of the complaint what each defendant--typically, a named government employee--did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation of each named defendant is essential allegation in civil-rights action). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 F. App'x 757, (10th Cir. 2009) (unpublished) (emphasis in original) (quoting

The facts stated in each of the following sections are taken from Plaintiff's allegations and viewed in a light most favorable to him. They are taken as true for this Order only.

## B. Defendant Childers

Plaintiff makes the following allegations against Childers: Plaintiff entered SLCJ with a personal check. (ECF No. 46, at 13.) He told Childers that he would neither endorse it nor authorize it to be cashed, but that the check should be given to his attorney. (*Id.*) Despite this, Childers cashed the check and took the money to cover a lien on his inmate account. (*Id.*) Further, Childers "made a threat" based on Plaintiff's "ending law suits against her [and] jail staff." (*Id.* at 14.) This played out when Plaintiff needed a copy of his inmate-account statement to send to the Court as to payment of the filing fee. (*Id.*) Though Childers knew he needed a copy of the statement, she "refus[ed]" it to deny Plaintiff court access. (*Id.* at 14, 16.) Plaintiff ended up getting the statement from another source (*Id.* at 14.) Finally, Childers "refused court order, policy and procedure of the jail." (*Id.* at 15.) "She even responded to grievances [that Plaintiff] wrote against her," which Plaintiff states is against "policy [and] procedure." (*Id.*)

## 1. Personal check

Though Plaintiff told Childers that he would neither endorse nor authorize the personal check, Childers cashed the check and used it to cover debt on Plaintiff's inmate account. (*Id.*) But

---

*Robbins*, 519 F.3d at 1250). Plaintiff should also include, as much as possible, specific dates or at least estimates of when alleged constitutional violations occurred.

      (iii) Each cause of action, with the facts and citations that directly support it, should be stated separately. Plaintiff should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim. *Robbins*, 519 F.3d at 1248 ("The [*Bell Atlantic Corp. v.*] *Twombly* Court was particularly critical of complaints that 'mentioned no specific, time, place, or person involved in the alleged [claim].' [550 U.S. 544, 565] n.10 (2007). Presented with such a complaint, 'a defendant seeking to respond to plaintiff's conclusory allegations . . . would have little idea where to begin.' *Id.*").

(ECF No. 43, at 5.)

these scant allegations do not include identification of any cause of action, including, crucially, a federal constitutional cause of action. Still, as Plaintiff was advised in the Cure Order, an allegation of a

> "random and unauthorized deprivation of property under color of state law . . . does not give rise to a § 1983 claim if there is an adequate state post-deprivation remedy." *See Frazier v Flores*, No. 13-1535, 2014 U.S. App. LEXIS 12936, at *4 (10th Cir. July 9, 2014) (unpublished) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

(ECF No. 46, at 2.)

To expand on these principles, state "action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. at 533. The question is whether SLCJ "provide[d Plaintiff] an adequate postdeprivation remedy for the alleged destruction of his property." *Id.* at 534. This could be "a suit in tort," *id.* at 535, or "state-common-law remedies," *Hudson*, 468 U.S. at 533, or the jail "grievance procedure." *Griffin v. Hickenlooper*, 549 F. App'x 823, 828 (10th Cir. 2013) (unpublished).

"[T]hat [Plaintiff] might not be able to recover under [government postdeprivation remedies] the full amount which he might receive in a § 1983 action is not . . . determinative of the adequacy of the state remedies." *Hudson*, 468 U.S. at 535. Further, it is not enough for a plaintiff to allege that he filed a grievance from which he got no relief; he must also allege "that the process was unavailable or inadequate to him." *Allen v. Reynolds*, 475 F. App'x 280, 283 (10th Cir. 2012) (unpublished); *Harris v. Chabries*, 114 F. App'x 363, 365 (10th Cir. 2004) (unpublished) (stating plaintiff "failed to allege that state law post-deprivation remedies . . . were inadequate" and, without "such an allegation, the taking of his property does not violate due process"); *Schlicher v. Gibbens*, No. 92-3087, 1993 U.S. App. LEXIS 9131, at *6 (10th Cir. Apr. 20, 1993) (unpublished) (holding, when inmate's property was seized and destroyed, he "clearly

had an alternative state remedy: he presented both a property claim and an administrative grievance" and "[t]he fact that plaintiff did not receive relief through these avenues does not entitle him to present his claim under § 1983"); *see also Hudson*, 468 U.S. at 539 (O'Connor, J., concurring) (stating "in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate").

Plaintiff acknowledges that SLCJ has a grievance process and even explicitly states that he "exhausted all administrative remedies" as to this exact issue, but he apparently does not realize that SLCJs grievance process *is* the "post-deprivation remedy" provided by the government here. (ECF No. 46, at 4, 13.) The law provides that it is the existence of the post-deprivation remedy that is dispositive, not the relief received or not. SLCJ's grievance process fulfills the requirement that it provide a post-deprivation remedy for Plaintiff's "stolen" check. Plaintiff has thus failed to state a claim upon which relief may be granted regarding property deprivation without due process.[8]

## 2. Retaliation

Plaintiff does not specify that his allegations here support a federal constitutional claim of retaliation. However, they suggest such a claim. More specifically, Plaintiff says that Childers

---

[8]Plaintiff appears to strongly believe that he somehow necessarily has a remedy in federal court here; however, he

> as so many other *pro se* [litigants], misperceives the use and purpose of § 1983. Section 1983 does not exist to right every wrong--it creates no enforceable rights. Section 1983 serves only to ensure an individual has a cause of action for violation of the Constitution and federal laws. Courts have held, in this type of case, that the existence of the alternative state remedy supplies "due process" and thus there is no "deprivation" by the state. Accordingly, in *Parratt v. Taylor*, 451 U.S. 527 (1981), where an inmate sued a warden [under] § 1983 over the loss of a hobby kit, the Court held the existence of a state tort claims procedure supplied due process and no federal claim could be presented. *Parratt* applied only to a negligent taking. Subsequently, in *Hudson v. Palmer*, 468 U.S. 517 (1984), the *Parratt* principle was extended to intentional taking. Thus, [such a plaintiff] has no claim.

*Woolsey v. Dep't of Corr.*, No. 91-1119, 1991 U.S. App. LEXIS 18184, at *3 (10th Cir. Aug. 1, 1991) (unpublished).

"made a threat to me personally and acted upon that threat," "personally [telling] me that she

knew about my pending law suits against her [and] jail staff," leaving a "paper trail that proves

this fact." (ECF No. 46, at 14.) So later when this Court requested Plaintiff to file a copy of his

inmate account statement, stating that, if Plaintiff did not comply, this action would be

dismissed, she refused him a copy. (*Id.*) Plaintiff states, "She knowingly [and] intentionally

refused to comply [and] told me she was doing it because I was suing her [and] and jail staff so I

would get my case dismissed." (*Id.* at 15.)

In the Cure Order, Plaintiff was given the following information to help him should he

wish to formulate a valid retaliation cause of action:

> "It is well-settled that '[p]rison officials may not retaliate against or
> harass an inmate because of the inmate's exercise of his right of
> access to the courts.'" *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th
> Cir. 2010) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th
> Cir. 1990)). To show retaliation, Plaintiff must allege three
> elements: (1) Plaintiff was involved in "constitutionally protected
> activity"; (2) Defendants' behavior injured Plaintiff in a way that
> "would chill a person of ordinary firmness from continuing to
> engage in that activity"; *and* (3) Defendants' injurious behavior
> was "substantially motivated" as a reaction to Plaintiff's
> constitutionally protected conduct. *Shero v. City of Grove*, 510
> F.3d 1196, 1203 (10th Cir. 2007).

(ECF No. 43, at 8 (emphasis added).)

It appears that Plaintiff may meet elements (1) and (3). After all, he was involved in the

constitutionally protected activity of litigating a case and asserts that Childers specifically said

that she was withholding the account statement to stymie his case. However, element (2) is not

met: Plaintiff has not alleged facts showing Childers' behavior injured him in a way that would

keep him from continuing to litigate his case. Indeed, in the SAC, Plaintiff specifies that--in

response to Childers' refusal to provide the statement--he "wrote motion for court order sent

letters to the court [and] provided documentation of defendants refusing me an inmate account

statement." (ECF No. 46, at 14.) He further indicates that he "ended up getting one from another source, inmate account statement." (*Id.* at 15.) And from the docket, the Court can see the inmate account statement. (*See, e.g.*, ECF 4.)

Thus, out of three elements that each must be alleged to state a valid retaliation claim, Plaintiff has not only failed to provide support for the second element, but has explicitly averred he actively forged ahead with his lawsuit despite Childers' behavior. Plaintiff thus fails to state a claim of retaliation.

### 3. Legal access

Plaintiff does not clarify that his allegations here establish a federal constitutional claim of denial of legal access. Still, generously read, they intimate such a claim. Plaintiff simply states that Childers refused him an inmate-account statement to "uphold her threat made to thwart [Plaintiff's] court access." (ECF No. 46, at 15.)

In the Cure Order, Plaintiff was given the following information to help him should he wish to formulate a proper claim of denial of court access:

> As Plaintiff fashions the amended complaint, Plaintiff should keep in mind that it is well-recognized that prison inmates "have a constitutional right to 'adequate, effective, and meaningful' access to the courts and that states have 'affirmative obligations' to assure all inmates such access." *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir. 1980). In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court expounded on the obligation to provide legal access by stating "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828 (footnote omitted & emphasis added).
> However, to successfully assert a constitutional claim for denial of access to courts, a plaintiff must allege not only inadequacy of the library or legal assistance provided but also "that the denial of legal resources hindered [the plaintiff's] efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 84 F.3d 1399, 1403 (10th Cir. 1996) (emphasis added); *Carper v. Deland*, 54

> F.3d 613, 616 (10th Cir. 1995). In other words, a plaintiff must show that "denial or delay of access to the court prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). Moreover, the non-frivolous litigation involved must be "habeas corpus or civil rights actions regarding current confinement." *Carper*, 54 F.3d at 616; *accord Lewis v. Casey*, 518 U.S. 343, 353-55 (1996).

(ECF No. 43, at 9.)

Though Plaintiff asserts Childers' refusal to provide the court-required inmate statement was meant to deny him legal access, with intent to cause Plaintiff's case dismissal, he does not provide the necessary allegation that the denial of the statement prejudiced his efforts to pursue nonfrivolous legal claims. And from the dockets, including that of this case, the Court can see none of his potentially relevant cases were affected. *Bacon v. Barker*, No. 2:21-CV-760-HCN (D. Utah filed Jan. 4, 2022); *Bacon v. Marshall*, No. 2:21-CV-701-HCN (D. Utah filed Dec. 1, 2021); *Bacon v. Cache Cnty. Jail*, No. 2:21-CV-648-TS (D. Utah filed Nov. 29, 2021); *Bacon v. U.S. Marshals Serv.*, No. 2:21-CV-633-JNP (D. Utah filed Nov. 3, 2021). Plaintiff thus fails to state a claim that his right to legal access was violated.

### 4. Policy and procedures

Plaintiff states that Childers violated Salt Lake County policy and procedures in several ways, including her response to grievances Plaintiff wrote against her. (ECF No. 46, at 13, 15-16.) However, Plaintiff does not heed the Cure Order's language, when it said that the Amended Complaint "does not appear to recognize that Defendants' failure to follow their own promises or jail policy does not necessarily equal [a] federal constitutional violation," (ECF No. 43, at 2). *See, e.g., Williams v. Miller*, 696 F. App'x 862, 870 (10th Cir. 2017) ("Merely showing that [defendants] may have violated prison policy is not enough [to show a constitutional violation]." (citations omitted)); *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (stating plaintiff

never sought "to explain how or why the violation of the . . . [prison] *policy* . . . necessarily demonstrates" his constitutional rights were breached and "[i]t is his burden to establish that the Constitution, not just a policy, is implicated" (emphasis in original)); *Hostetler v. Green*, 323 F. App'x 653, 657-58 (10th Cir. 2009) (unpublished) (noting defendant's mere violation of prison regulation does not equate to constitutional violation); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."). The Court thus does not further address allegations of policy violations, which--by themselves--fail to state a claim upon which relief may be granted.

### 5. Conclusion

Having determined that Plaintiff's allegations against Childers fail to state a claim upon which relief may be granted, the Court dismisses Childers from this action.

### C. Defendant Moore

Apparently because Plaintiff was indigent, lacking money for postage, Moore denied Plaintiff seven times when he tried to send legal mail to this Court. (ECF No. 46, at 16.) But referencing the elements of a cause of action in the section above on legal access, Plaintiff has not even insinuated that "denial or delay of access to the court prejudiced him in pursuing litigation." *Treff*, 74 F.3d at 194. Indeed, a review of Plaintiff's cases in this Court within the relevant timeframe here reveals his ability to file appropriate pleadings at each step of proceedings. *See McRae v. Carvajal*, No. 21-1261, 2022 U.S. App. LEXIS 27656, at *5 n.2 (10th Cir. Oct. 4, 2022) (unpublished) (noting plaintiff had "suffered no prejudice from any deprivation of postage" when plaintiff "filed an opening brief, a reply brief, a response to the motion to dismiss, and several motions of his own"). These allegations thus fail to state a claim upon which relief may be granted, and Moore is dismissed from this action.

### D. Defendant John Doe Dentist

Plaintiff's allegations against this defendant are generally limited to the following: "Defendant who is the dentist at Salt Lake County Jail and whos[e] name I don't know at this time denied me adequate meaningful dental care knowingly [and] intentionally. . . caused undue pain." (ECF No. 46, at 16-17.) "The dentist told [Plaintiff] to obtain treatment upon . . . release from the jail." (*Id.* at 17.)

These spare and conclusory allegations do not meet the standards Plaintiff was notified of in the Cure Order:

> Plaintiff should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim. *Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("The *Bell Atlantic Corp. v. Twombly* Court was particularly critical of complaints that 'mentioned no specific time, place, or person involved in the alleged claim.' 550 U.S. 544, 565 n.10 (2007). Given such a complaint, 'a defendant seeking to respond to plaintiff's conclusory allegations . . . would have little idea where to begin.' *Id.*").

(ECF No. 43, at 5 (cleaned up).)

In his SAC--though thoroughly alerted to his pleading responsibilities--Plaintiff has not provided the dentist's name nor identifying features of the dentist, a description of his dental problems[9] and details of how they affected him, dates involved,[10] and the relief a remedy could

---

[9]In a SAC section in which Plaintiff mentions several defendants, he avers the following: "I had complications one time so bad I was in pain because my face was swollen for infection [and] needed antibiotics." (ECF No. 46, at 19.) But, fatally, Plaintiff does not suggest that he interacted with a particular individual defendant about this situation, let alone that a particular defendant was told of the swelling and infection, and actually recognized potential serious dangers to Plaintiff, yet refused to help. Neither does Plaintiff try to pinpoint a date nor indicate he was even denied antibiotics or how the pain and infection played out. In framing this allegation, Plaintiff also does not "isolate the allegedly unconstitutional acts of each defendant"; thus, Plaintiff gives inadequate notice of "the nature of the claims against each" defendant. *Robbins*, 519 F.3d at 1250. Indeed, Plaintiff fails to heed the Court's direction that a full explanation of the "'who,' 'what,' . . . 'when,' and 'why'" is required, leaving this allegation insufficient to state a claim. (ECF No. 43, at 5 (quoting *Robbins*, 519 F.3d at 1248).)

[10]In general, the SAC does not supply dates around when this unknown dentist may have interacted with Plaintiff. It does say Plaintiff "was transported to Salt Lake County Jail" on October 14, 2021, then started receiving the attention of the federal judge in his criminal case, on November 30, 2021, regarding his needed dental work.

bring, (ECF No. 46). *See Robbins*, 519 F.3d at 1248. Out of the crucial questions requiring an

answer, the only detail given is where: SLCJ. (ECF No. 46.)

Further, Plaintiff's terse assertion that a dentist's lack of treatment "knowingly [and]

intentionally . . . caused undue pain," (ECF No. 46, at 16-17), is a quintessential example of an

allegation involving "nothing more than a 'formulaic recitation of the elements' of a

constitutional . . . claim," which is "conclusory and not entitled to" an assumption of truth. *Iqbal*,

556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 554-55). As the third shot Plaintiff had at stating

a claim here, the SAC does not "give the court reason to believe *this* plaintiff has a reasonable

likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in

original). The SAC has truly nothing "more than 'unadorned, the-defendant-unlawfully-harmed-

---

(ECF No. 46, at 11, 18.) To obtain outside dental work, Plaintiff then received seven furloughs within about five months, until he was transported away from SLCJ in "July 2022." (*Id.* at 18.) Without more information about what Plaintiff's dental problems were, there is no way to infer whether the approximate month-and-a-half period before Plaintiff started receiving treatment could have combined with other unstated facts to support a conclusion that Plaintiff's allegations state a cruel-and-unusual-punishment claim. After all, the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation[, so] the 'circumstances, nature, and duration of the challenged conditions must be carefully considered.'" *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2011) (citation omitted).

The SAC does mention two specific dates possibly involving the unnamed defendant-dentist. On March 11, 2022, a SLCJ dentist allegedly gave Plaintiff medication for pain--after Plaintiff returned from an outside dental visit. (ECF No. 46, at 19.) By itself, this unadorned allegation that the defendant-dentist *treated* Plaintiff obviously does not support a claim of inadequate medical treatment. Other defendants mentioned as interacting with Plaintiff on March 11, 2022 are discussed elsewhere in this Order.

Also, the SAC asserts that, on March 23, 2022, an unnamed dentist at SLCJ "misdiagnosed" him. (ECF No. 46, at 21.) Such an assertion, together with more detail, might help support a negligence or malpractice claim, but does not rise to the level of a cruel-and-unusual-punishment claim, with its requirements of serious harm (not suggested by the mere word, "misdiagnosis") and a defendant's knowledge of serious harm that is deliberately and indifferently disregarded. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This unnamed dentist on March 23 purportedly said that he "denie[d] treatment because it costs too much [and] length of stay is a factor." (*Id.* at 23.) Still, this says nothing about the seriousness of the harm at issue on March 23, nor does it account for the fact that Plaintiff was seeing an outside dentist an average of every 40 days during the 10 months he was in SLCJ. In fact, at the very least, Plaintiff had just seen the outside dentist on March 11, 2022. (*Id.* at 19.) This situation is discussed further in footnote 12.

Moreover, "even if [SLCJ's] budget were a cause [of a cap on treatments offered], the mere existence of a budget does not demonstrate deliberate indifference." *Estate of Grubbs v. Weld Cnty. Sheriff's Office*, No. 16-CV-714, 2017 U.S. Dist. LEXIS 33009, at *14 (D. Colo. Mar. 8, 2017) (citing *Sherman v. Klenke*, 653 F. App'x 580, 592 (10th Cir. 2016) ("The naked assertion that Defendants considered cost in treating [an inmate's] hernia does not suffice to state a claim for deliberate indifference"); *Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir. 2014) ("[T]he deliberate indifference standard . . . does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society.")).

me accusation[s].'" *Eaves*, 2024 U.S. App. LEXIS 12964, at *2-3 (quoting *Iqbal*, 556 U.S. at 678). Without specifying the unnamed dentist's behavior, Plaintiff says he was harmed but does not detail how. Instead of meeting his duty to allege facts from which the dentist's intent to "knowingly [and] intentionally . . . cause[] . . . pain" may be inferred, Plaintiff flatly concludes the dentist's intent meets the intent requirement of the cause of action. However, "[f]acts, not conclusions, must be pleaded"; the Court is not required to accept as true "a 'legal conclusion couched as a factual allegation.'" *Renaud*, 2023 U.S. Dist. LEXIS 19808, at *8 (quoting *Iqbal*, 556 U.S. at 678).

Analyzing Plaintiff's allegations more precisely against the elements of an inadequate-medical-treatment cause of action, the Court is even more resolute in its conclusion that a claim has not been validly stated here.[11] The Tenth Circuit holds that a pretrial detainee's claims as to conditions of confinement are controlled by the Fourteenth Amendment's Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see Hooks v. Atoki*, 983 F.3d 1193, 1203-04 (10th Cir. 2020).

The Eighth Amendment demands that carceral officials must provide humane conditions of confinement informed by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

---

[11]For Plaintiff's information, the factors involved in this cause of action were set forth in the Cure Order. (ECF No. 43, at 7-8.)

A carceral official breaches the Eighth Amendment when two elements are met. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The second element of an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Carceral officials must have a "sufficiently culpable state of mind," which is "deliberate indifference" to inmate health or safety. *Id.* "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* It is not enough to establish that the official should have known of the risk of harm. *Id.*

Again, a conditions-of-confinement claim's adequacy is drawn from "the particular facts of each situation[, so] the 'circumstances, nature, and duration of the challenged conditions must be carefully considered.'" *Despain*, 264 F.3d at 974. "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the condition increases, the length of exposure required to make out a constitutional violation decreases. *Id.* In other words, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations . . . 'may meet the standard despite a shorter duration." *Id.* (citations omitted).

However, Plaintiff's curt statement, comprising the bulk of his relevant allegations against an anonymous dentist, that "[in]adequate . . . dental care knowingly [and] intentionally. .

.  caused undue pain," (ECF No. 46, at 16-17), does not support any part of this description of the cause of action. For instance, there are no factual allegations from which to draw an inference about the seriousness of Plaintiff's injury. Meanwhile, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. 825 at 834. Thus, the first prong of a cruel-and-unusual-punishment claim has not been met with requisite allegations. Further, there are no factual allegations from which to draw an inference about the dentist's knowledge of whether Plaintiff's harm was serious and the dentist's subsequent decision to do nothing to help Plaintiff, despite the dentist's knowledge of serious harm. The SAC does not give "the particular facts of [Plaintiff's dental] situation," so that the Court may carefully consider "the circumstances, nature, and duration of the challenged conditions." *Despain*, 264 F.3d 965 at 974 (cleaned up).

Because the facts Plaintiff alleges are insufficient to support a plausible claim of unconstitutionally inhumane carceral conditions, this cause of action is dismissed.[12]

### E. Defendants Harris, Ballard, and Sheriff Rivera

The totality of Plaintiff's allegations against these defendants is that they "are all part of policy making that deny dental treatment based upon length of stay and cost[; . . .] thus they deny me treatment that violated my constitutional rights [against] . . . cruel [and] unusual punishment." (ECF No. 46, at 17.) First, this meager sentence is stated in the form of a

---

[12]The SAC includes a section arguing that Plaintiff's dental care was referred to as "cruel [and] unusual" by a federal judge of this court in Plaintiff's criminal case. (ECF No. 46, at 18.) In that SAC section, Plaintiff asserts that the judges, prosecutor, and defender in the criminal case agreed to 7 furloughs, during a 5-month period, in which Plaintiff got "needed dental care." (*Id.*) Still, that section provides no detail about whether this unnamed dentist-defendant knew about and disregarded the dental problems or need for care; what the dental problems were; and what care was required that was not provided. And, the section supports the inference that Plaintiff received the dental care he required while alternately held at SLCJ and furloughed. It is clear from the timeline involved, in which Plaintiff was in SLCJ custody for about 10 months total, in which he had 7 furloughs--that there could not have been long periods in which he was languishing with no care. (*Id.* at 10, 18.) After all, the criminal-case judge first allegedly remarked on Plaintiff's need for treatment within about 6 weeks after Plaintiff first entered this stint at SLCJ (starting October 14, 2021). (*Id.*) And, 7 furloughs in 10 months averages out to dental treatment at least every 40 days.

conclusion, not as a set of factual allegations that support the elements of a cause of action. Plaintiff here again ignored the Court's instruction that a complete description of the "'who,' 'what,' 'why,' 'when,' and 'why'" is mandatory, meaning this allegation falls short of stating a claim. (ECF No. 43, at 5 (quoting *Robbins*, 519 F.3d at 1248).) Second, Plaintiff's articulation of this cause of action fails to "isolate the allegedly unconstitutional acts of each defendant"; Plaintiff therefore gave insufficient notice of "the nature of the claims against each" defendant. *Robbins*, 519 F.3d at 1250. Finally, it is easy to infer that Plaintiff named these defendants--not for their personal participation in the alleged deprivation of his constitutional rights--but because of their supervisory roles. However, as the Court warned Plaintiff in the Cure Order, it is inappropriate to "allege civil-rights violations on a respondeat-superior theory," (ECF No. 43, at 3). *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). The Court even specified to Plaintiff that this applies to Plaintiff's attempts to state claims against these very defendants. (ECF No. 43, at 3.) The upshot of this paragraph is that Plaintiff fails to state a claim here against Defendants Harris,[13] Ballard, and Sheriff Rivera.

### F. "Defendants # 4 thru # 17"

These are "Defendants # 4 thru # 17": Ballard (also appearing in section E above); John Doe dentist (also appearing in section D above); Nurses Tammy (also appearing in section I below), Diane (also appearing in section I below), Gail, Chanda, Brett, David, Pat, Dallas, and Jessica; and three John Doe doctors. (ECF No. 46, at 3.) Plaintiff asserts about these defendants that he "personally spoke to [these] defendants who all at different times, dates, and separate occasions including by way of grievances as well told [Plaintiff] that it is the custom, practice

---

[13]It seems particularly implausible that Defendant Harris, of the Unites States Marshals Service, is a policymaker for SLCJ.

[and] policy to deny treatment medical/dental based on an inmate's length of stay [and] the cost

of treatment." (*Id.* at 17-18.) Such alleged statements by these defendants does not link the

establishment of a "custom, practice [and] policy" to any particular defendant, nor does it

affirmatively link any defendant or "custom, practice [and] policy" to any specific facts

supporting the idea that serious harm to Plaintiff came by way of a specific defendant with

knowledge of the potential for serious harm to Plaintiff, drawing the conclusion that the

defendant's behavior would cause the serious harm, and yet performing the behavior anyway.

Plaintiff here again forsook the Court's dictate that Plaintiff must describe the "'who,'

'what,' 'why,' 'when,' and 'why'" of his claim. (ECF No. 43 at 5 (quoting *Robbins*, 519 F.3d at

1248).) Plaintiff also fails to "isolate the allegedly unconstitutional acts of each defendant,"

therefore giving deficient notice of "the nature of the claims against each" defendant. *Robbins*,

519 F.3d at 1250.

These allegations are thus dismissed for failure to state a claim upon which relief may be

granted.

### G. Unnamed SLCJ Staff Member

Plaintiff asserts that an unknown staff member "harassed [him] every time [he] came

back from dental visits[,] . . . saying rude crude and unacceptable remarks." (ECF No. 46, at 19.)

First, this assertion disregards the tenet (brought to Plaintiff's attention in the Cure Order) that a

thorough depiction of the "'who,' 'what,' 'why,' 'when,' and 'why'" is essential, resulting in failure

to state a claim. (ECF No. 43, at 5 (quoting *Robbins*, 519 F.3d at 1248).) Second, Plaintiff does

not identify--or even intimate--what constitutional right is violated by such remarks. Third, "acts

or omissions resulting in an inmate being subjected to nothing more than threats and verbal

taunts do not violate the Eighth Amendment." *McBride*, 240 F.3d at 1291 n.3 (citing *Collins v.*

*Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) ("Verbal harassment or abuse of the sort alleged in this case [i.e., sheriff threatened to hang prisoner following prisoner's request to mail some legal correspondence] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.")). Finally, Plaintiff appears to be trying to raise the kind of claim prohibited by 42 U.S.C.S. § 1997e(e) 2025, reading, "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of a physical injury or the commission of a sexual act." This allegation is thus dismissed for failing to state a claim upon which relief may be granted.

### H. Defendant Dallas

Plaintiff alleges that a nurse with the first name of "Dallas" checked Plaintiff in at 1:30 p.m., after one of his outside dental visits on March 11, 2022. (ECF No. 46, at 19.) Dallas then took away the outside medication Plaintiff brought with him. (*Id.*) "At 3:30 Defendant Dallas told [Plaintiff] a doctor at the jail ordered [Plaintiff] pain meds and that [Dallas] would give [Plaintiff] one then and the rest [Plaintiff] would get in his housing unit." (*Id.*) Dallas gave Plaintiff the one pain pill, then "said he would personally go up to medical to get [Plaintiff] the rest [and] come to [Plaintiff's] housing unit" but "he never did." (*Id.* at 20.) Other personnel later told Plaintiff that he would get another dose the next day. (*Id.*) Plaintiff thus went "over 16 hours" between pain pills, causing him "knowingly and intention[ally] unnecessary pain." (*Id.*)

These allegations fail to state a valid claim. The only defendant identified in this section is Dallas. And Dallas actually provided requested treatment by giving Plaintiff a pain pill. (*Id.*) Without more, Dallas's alleged failure to later bring more pain pills to Plaintiff does not state a claim for cruel-and-unusual punishment though. First, Plaintiff does not allege that Dallas had a "culpable state of mind," which is "deliberate indifference" to inmate health or safety. *Farmer*,

511 U.S. at 834. Second, Plaintiff fails to allege his "unnecessary pain" was objectively, 'sufficiently serious.'" *Id.* The simple allegations that Plaintiff went sixteen or so hours between pain pills does not necessarily mean that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). Again, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations . . . 'may meet the standard despite a shorter duration." *Despain*, 264 F.3d at 974 (citations omitted). Finally, the SAC makes clear that Dallas was not even on duty for the whole sixteen hours and therefore was presumably not responsible for medication given or not given during the whole sixteen hours. (ECF No. 46, at 20.) There was a shift change within at least seven hours of Dallas administering the pain pill at 3:30 p.m. (*Id.*) Plaintiff has not alleged that the pain pill's efficacy was shorter than the remainder of Dallas's shift.

In sum, Plaintiff's allegations against Dallas do not state a claim upon which relief may be granted and are thus dismissed.

## I. Defendants Tammy and Diane

Plaintiff asserts Tammy and Diane "denied [him] meaningful access to the courts." (*Id.* at 21.) More specifically, Plaintiff essentially alleges Tammy and Diane thwarted adequate access to the grievance process, though Plaintiff was required to exhaust his administrative remedies in the grievance process to enable him to validly file prisoner civil-rights actions in federal court, (*id.*). *See* 42 U.S.C.S. § 1997e(a) (2025) ("No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

Still, "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). And, "there is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of administrative grievance process create a liberty interest in that process." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished); *see also Dixon v. Bishop*, No. CV TDC-19-740, 2020 U.S. Dist. LEXIS 41678, at *20 (D. Md. Mar. 11, 2020) ("[P]risons do not create a liberty interest protected by the Due Process Clause when they adopt administrative mechanisms for hearing and deciding inmate complaints[;] any failure to abide by the administrative remedy procedure or to process [grievances] in a certain way does not create a constitutional claim.").

Also, Section 1997e(a)'s exhaustion requirement depends on an administrative remedy's availability. *Ross v. Blake*, 578 U.S. 632, 642 (2016). As the Supreme Court put it, that means "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Court further identified three situations "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. The two that are potentially relevant here are as follows: (1) "[W]hen (despite what regulations or guidance materials may promise) [the administrative procedure] operates as a simple dead end-- with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* And, (2) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. Thus, Plaintiff would not necessarily be foreclosed from bringing unexhausted claims in this Court. In response

to a defendant's possible affirmative defense that Plaintiff had not fully grieved (exhausted) a claim, Plaintiff would have the chance to rebut with a showing that grievance remedies were not available. *Id.* at 642-44.

In addition, Plaintiff's accusation that Tammy and Diane did not provide him with names of prospective defendants as he requested does not state a claim upon which relief may be granted. First, Plaintiff yet again fails to follow the pleading requirement that Plaintiff must itemize the "'who,' 'what,' 'why,' 'when,' and 'why'" of his claim. (ECF No. 43 at 5 (quoting *Robbins*, 519 F.3d at 1248).) Second, Plaintiff does not "isolate the allegedly unconstitutional acts of each defendant," therefore giving deficient notice of "the nature of the claims against each" defendant. *Robbins*, 519 F.3d at 1250. Finally, Plaintiff need not have the names of defendants he wishes to sue "so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served." *Roper*, 81 F.3d at 126. So Tammy and Diane's alleged refusal to give Plaintiff the names of prospective defendants could not have doomed Plaintiff's legal access.

Accordingly, these allegations are dismissed for failure to state a claim upon which relief may be granted.

## II. ORDER

For failure to state a claim upon which relief may be granted, **IT IS ORDERED** that Plaintiff's Second Amended Complaint, (ECF No. 46), is **DISMISSED** with prejudice, *See* 28 U.S.C.S. § 1915(e)(2)(B) (2025). Three iterations of the complaint, (ECF Nos. 14, 27, 46),

and a full round of comprehensive guidance on curing deficiencies, (ECF No. 43), have not resulted in an improved pleading. Neither liberal interpretation of Plaintiff's claims nor further opportunity to amend would lead to a different result.

DATED this 18th day of March 2025.

BY THE COURT:

JUDGE DALE A. KIMBALL
United States District Court